Dr. H. C. JOSEPHSON and Mrs. Effie Josephson, Appellants,

v.

AMERICAN EMPLOYERS INSURANCE COMPANY, Appellee.

No. 15754.

United States Court of Appeals
Fifth Circuit.

March 27, 1956.

Rehearing Denied April 25, 1956.

Isaac Abramson, Shreveport, La., Wilson, Abramson & Maroun, Shreveport, La., for appellants.

Charles Egan, Shreveport, La., for appellee.

Before BORAH, TUTTLE and BROWN, Circuit Judges.

BORAH, Circuit Judge.

Brought under Louisiana Revised Statutes of 1950, LSA 22:655, against the public liability insurer of a one ton pick-up truck driven by Earl Bell, the suit was for damages for injuries sustained by Mrs. H. C. Josephson in an automobile accident and to recover an amount claimed by her husband, Dr. Josephson, as reimbursement for expenses resulting therefrom. The case was tried to a jury which returned a verdict in favor of defendant. From the judgment entered on the verdict plaintiffs appeal.

The facts, to the extent that they need here be stated, are these: On the afternoon of the day in question Mrs. Josephson as the sole occupant of a DeSoto automobile was driving in a northerly direction on U. S. Highway 71. Upon reaching a point about five miles south of Coushatta, Louisiana, and as she drew near a culvert and post and the Perryman gravel driveway which lay 69 feet beyond,[1] she was driving in her right traffic lane behind a car which was occupied by soldiers. Immediately ahead of the soldiers' car and in the order named were the Bell truck and a third car the identity of which was unknown. From this point forward, the testimony is in sharp conflict. It was the testimony of Mrs. Josephson that the soldiers' car which she had been following for some distance passed the Bell truck and when she saw that it had also passed the vehicle ahead of the truck, she waited a few minutes to see whether the driver of the truck was going to pass the car in front of him. During this interval she followed the truck at a distance of 75 feet and at a speed of 40 miles per hour, which conformed to the speed of the truck. That when she received no intimation that the truck was going to pass the car which it was following she looked ahead and behind for oncoming and following traffic and seeing none pulled over into the left traffic lane, sounded her horn and increased the speed of her car to 50 miles per hour. Mrs. Josephson further testified that when the front of her car was fifteen or twenty feet south of the culvert and post, and her right front fender and the door of the truck were not more than three or four feet apart, Bell suddenly pulled over to the left and into her traffic lane without giving any hand signal or other warning of his intention. When this occurred, Mrs. Josephson said that she started blowing her horn and pulled further over to the left and off the paved portion of the highway as far as she

could go without driving off the culvert or into the post. That at this point she applied her brakes in an attempt to stop, trying all the while to stay off the paved portion of the highway as much as possible in order to avoid hitting the truck. This she was successful in doing and after she had passed the post the truck moved on ahead of her. At this time she frankly concedes that she still had control of her car but when she ran into loose gravel in the Perryman driveway and while trying to get back on the pavement her car skidded completely across the highway and came to rest in a ditch facing in the direction from which it had come.

Appellee concedes that the four vehicles here involved were in the same relative position hertofore described as they approachd the culvert, but it contends that when the soldiers' car passed the Bell truck and the unidentified car, Bell did not wait for the soldiers' car to get back into its right traffic lane but immediately pulled over to his left to go around the unidentified car. That when Bell undertook to pass the car ahead his truck was half way across the culvert and he then knew that Mrs. Josephson was eight or ten feet behind him in her right traffic lane for he had checked her position by looking into his rear view mirror before beginning his passing maneuver. According to Bell three-fourths of his truck had passed the unknown car at the time he first heard the horn of the Josephson car and when he then looked back through his mirror he saw that car in the left traffic lane skidding across the road right by the Perryman driveway. Bell testified positively that he did not at any time see this car on the shoulder of the highway and that no part of appellant's car ever got to a point where it was ahead of or even with any part of his truck. Thus, as in most cases of this kind, the evidence was conflicting and the jury who saw and heard the witnesses resolved the question of negligence, as indicated by their verdict, in favor of appellee.

▆▆▆ On this appeal, appellant urges three points of error. First, that the court erred in failing to give four requested instructions. Two of the instructions sought related to the duties which devolve upon the driver of a motor vehicle before attempting a "left turn." The third asked the court to charge the jury "that the blowing of a horn by the overtaking vehicle is for the convenience of the rear vehicle and not for the benefit of the forward vehicle * * *" and that "it is immaterial whether or not * * * a horn was blown by the [rear] vehicle, because the forward vehicle had no right to veer into the left traffic until he is certain that the road is clear" etc. And the fourth instruction sought was to the effect that if the defendant truck suddenly turned into plaintiff's traffic lane and forced her off the highway, the defendant would be liable irrespective of whether or not any direct contact was made between the two vehicles. We are in no doubt that the instructions sought were rightly refused. This case clearly involves a passing situation and there is nothing in this record which even remotely suggests that the truck driver was attempting to make a left turn on the highway. The duties which the law imposes on drivers of overtaking and passing vehicles are set forth with clarity in the LSA–Revised Statutes of 1950, 32:233 [2] and the court in its charge

2. LSA–Revised Statutes of 1950, 32:233 reads in pertinent part as follows:

"A. The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle.

"B. The driver of an overtaking vehicle shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction.

"C. The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic

clearly tracked the language of this statute. Under Subsection B [3] of the applicable law it is clear that appellants' third requested instruction is erroneous on its face. As to the fourth requested instruction it is sufficient to say that the court charged the jury that the plaintiffs based their claims upon various alleged acts of negligence on the part of the truck driver Bell and asserted that his negligence solely and proximately caused the accident in the following respects, among others: That he gave no signal before cutting sharply to the left; that he did not look to his left or rear before cutting into the left lane; and that all of the enumerated acts of negligence forced Mrs. Josephson off the paved portion of the road causing the accident. From the balance of the court's charge it is clear that the jury were authorized to find for the plaintiffs if they believed that Bell's negligence solely and proximately caused the accident. It follows that it was implicit in the court's charge that contact between the vehicles was not necessary in order to authorize recovery.

■ Appellants' second point is levelled at the charge which was given by the court. They contend: (1) that the charge mitigated the necessity of the forward vehicle giving any ample warning of his intention to make a left turn; (2) that in spite of the jurisprudence it laid undue stress and importance on the sounding of the horn by the overtaking driver; (3) that by excessive use of the word "must" it unintentionally, but prejudicially, influenced the jury against the plaintiff; (4) that it was unnecessarily complicated, repetitious and laid undue stress favorable to defendant; and (5)

that it was confusing in discussing at great length contributory negligence, last clear chance and comparative negligence, when the undisputed facts presented no such issues. The record reveals that no objection to the charge was made on the ground first mentioned and the only objection made on the subject of sounding of a horn by the overtaking vehicle was: "This charge is objected to because it does not correctly state the law." Obviously, appellants' first and second propositions present nothing for review. American Fidelity & Casualty Company v. Drexler, 5 Cir., 220 F.2d 930, 934. As to appellants' third specification it also appears that no objection was made to the charge on the basis here raised. But conceding *arguendo* that all of the objections furnish a basis for review, our consideration of the case and the court's charge as a whole leave us in no doubt that this assignment of error is not of sufficient merit to authorize our nullification of the trial and judgment, though some part of the charge may be subject to criticism as separate propositions.

■ The only other error assigned is to the refusal of a new trial. It appears that the application was received and considered by the court, and its ruling thereon may not be reviewed under such circumstances as here involved. Moreover, it appears that there was evidence to sustain the verdict, and, therefore, the court committed no error in overruling the motion for a new trial.

We find the record without reversible error. The judgment is affirmed.

Affirmed.

---

for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.

\*    \*    \*    \*    \*

"F. The driver of a vehicle who has been given adequate warnings by an over-

taking and passing vehicle, shall promptly give way to his right in favor of such overtaking and passing vehicle and shall not increase the speed of his vehicle until it has been completely overtaken and passed. Nothing herein shall mitigate against the provisions for prima facie responsibility in Subsection C."

3. See footnote 2.